# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JENNIFER WILLIAMS MORSCH,

    Plaintiff,

v.                                Case No: 6:18-cv-148-Orl-40DCI

JP Morgan Chase Bank, N.A.,

    Defendant.
_____/

## ORDER

This cause is before the Court without oral argument on the following:

1. Defendant JPMorgan Chase Bank, N.A.'s Motion for Entry of Summary Judgment on its Third Affirmative Defense (Doc. 25), filed July 26, 2018;

2. Defendant JPMorgan Chase Bank, N.A.'s Motion for Entry of Summary Judgment on All Counts of the Complaint (Doc. 38), filed September 10, 2018;

3. Jennifer William Morsch's Response in Opposition to JPMorgan Chase Bank, N.A.'s Motion[s] for Summary Judgment (Doc. 41), filed October 7, 2018; and

4. Defendant JPMorgan Chase Bank, N.A.'s Reply in Further Support of its Motions for Summary Judgment (Doc. 45), filed October 25, 2018.

Upon consideration and review of the record as cited by the parties in their respective briefs, Chase's motions are due to be denied.

## I.    BACKGROUND

This dispute arises out of the mysterious disappearance of personal property stored inside a safe deposit box. According to the evidence, which the Court must view in the light most favorable to the non-movant, on April 16, 2003, Plaintiff Jennifer Morsch

("**Morsch**") entered into a lease agreement with Washington Mutual Bank ("**WAMU**") to rent safe deposit box 00Z0064 (the "**Leased Box**") (Doc. 37-1, pp. 11–13; Doc. 1-1, pp. 12–13 (the "**2003 Lease Agreement**")). Pursuant to the 2003 Lease Agreement, Morsch agreed to be "bound by . . . all amendments thereto." (Doc. 1-1, p. 12). She also agreed to be bound by WAMU's Account Disclosures and Regulations, which provided in pertinent part, that "[WAMU]'s liability with respect to any claim arising out of the [2003] [L]ease [Agreement] w[ould] be limited to $10,000.00." (*Id.*; Doc. 25-3, pp. 78).

After executing the 2003 Lease Agreement, Morsch received two keys to the Leased Box and began storing property, including jewelry, family heirlooms, gold coins, and cash. (Doc. 37-1, pp. 15, 18, 20–95 (describing each item stored in the Leased Box)). The Leased Box was secured by a two-key system, wherein Morsch used one of her keys along with a corresponding key held by the bank. (*Id.* at p. 98). The Leased Box was physically located in WAMU's vault near the top center of all the safe deposit boxes. (Doc. 25-2, p. 17). Therefore, a bank employee always had to use a stepladder to pull out the inner container and hand it down to Morsch. (Doc. 37-1, pp. 98, 113–14).

Morsch accessed the Leased Box on multiple occasions over the course of thirteen years. (*Id.* at 96). Aside from allowing bank personnel to assist her in opening the Leased Box, Morsch never gave custody or control of her keys to any other individual. (Doc. 25-1, pp. 9, 12). Nor did Morsch authorize anyone access to the Leased Box. (*Id.*; Doc. 37-1, p. 105).

In 2008, Defendant JPMorgan Chase Bank, N.A. ("**Chase**") purchased and assumed certain WAMU assets from the Federal Deposit Insurance Corporation, including the Leased Box. (Doc. 25, p. 4; Doc. 38, p. 4). Following Chase's assumption

of WAMU's assets, Morsch visited Chase to access the Leased Box in 2009 and 2012. (Doc. 37-1, pp. 97, 100–101, 108, 158). Morsch does not recall why she accessed the Leased Box in 2009, but in 2012, she accessed the box to deposit several rare, collectible gold coins. (*Id.* at pp. 97, 101–04). Morsch did not remove anything from the Leased Box, which contained the following "**Property**":

a. one (1) Gold Eagle coin valued at $1,000.00;
b. one (1) gold link bracelet with gold charms valued at $1,000.00;
c. one (1) pair of one carat diamond earrings valued at $2,000.00;
d. one (1) gold heart bracelet valued at $700.00;
e. one (1) pair of one-half carat diamond earrings valued at $1,000.00;
f. one (1) set of Tiffany earrings and necklace set valued at $2,000.00;
g. one (1) diamond cascade necklace and earrings set valued at $1,500.00;
h. one (1) antique diamond accent watch valued at $1,500.00;
i. one (1) gold watch valued at $500.00;
j. one (1) one-half carat diamond necklace valued at $700.00;
k. one (1) three-quarter carat diamond pear shaped ring valued at $5,000.00;
l. one (1) diamond wedding band valued at $1,000.00;
m. one (1) gold wedding band valued at $500.00;
n. one (1) diamond cocktail ring valued at $1,000.00;
o. one (1) ruby and diamond ring valued at $1,000.00;
p. one (1) man's one carat diamond ring valued at $3,000.00;
q. one (1) one-half carat diamond ring valued at $1,000.00;
r. one (1) antique diamond ring valued at $1,000.00;
s. one (1) birthstone with diamond accent ring valued at $700.00;
t. one (1) birthstone diamond ring valued at $500.00;
u. one (1) one carat diamond necklace valued at $1,500.00;
v. one (1) three carat diamond and gold necklace valued at $10,000.00;
w. one (1) sapphire stone necklace valued at $1,500.00;
x. miscellaneous collectable gold coins valued at $20,000.00;

3

      y. miscellaneous cash in U.S. currency valued at $40,000.00; [and]

      z. one (1) slide bracelet valued at $1,500.00.

(Doc. 25-2, p. 18; Doc. 37-1, pp. 20–95).

Three years later, Chase issued an updated Safe Deposit Agreement that states, in relevant part:

> By signing the Safe Deposit Contract Card ("Contract") or using the Safe Deposit Box services - such as paying the annual rent, setting up a PIN, receiving two safe deposit box keys, and accessing the box - the person or persons ("you") agree to lease a safe deposit box ("box") identified on the Contract with JPMorgan Chase, National Association ("Bank" "we" or "us").
>
>       \*   \*   \*
>
> THE BANK WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, CONSEQUENTIAL OR EMOTIONAL DAMAGES REGARDLESS OF THE FORM OF ACTION. YOU AGREE AND REPRESENT THAT THE AGGREGATE VALUE OF THE CONTENTS OF THE BOX WILL NOT EXCEED $25,000 AT ANY TIME AND BASED ON THIS REPRESENTATION FURTHER ACKNOWLEDGE AND AGREE THAT THE BANK'S MAXIMUM LIABILITY, IF ANY, WILL BE LIMITED TO $25,000 WITH RESPECT TO ANY CLAIM ARISING OUT OF, OR OTHERWISE CONNECTED WITH, THIS AGREEMENT, THE BOX OR ITEMS STORED IN THE BOX.
>
>       \*   \*   \*
>
> You agree not to use the box to store money, coin, currency unless it is of a collectible nature, and you assume all risks and hold the Bank harmless of any losses or alleged loss of said money, coin or currency.

(Doc. 25-3, pp. 93–94).

According to Chase's Product Manager, Geoffrey Andrews ("**Andrews**"), Chase mailed Morsch a copy of the 2015 Lease Agreement along with a letter notifying her that the 2015 Lease Agreement would go into effect on her 2015 annual renewal date. (*See*

4

Doc. 25-3, pp. 8; *see id.* at p. 81 (the "**2015 Letter**")). Morsch testified, however, that she never received the 2015 Letter or the 2015 Lease Agreement. (Doc. 25-1, pp. 7, 11; Doc. 37-1, pp. 111, 152).

Morsch did not access the Leased Box between 2012 and 2016, but she continued to make rental payments. (Doc. 37-1, p. 96; Doc. 25-3, p. 109). On Friday, August 3, 2016, Morsch returned to Chase to withdraw cash from the Leased Box. (Doc. 37-1, p. 109). Morsch entered the vault with a bank employee and attempted to use her key to open the Leased Box, but it would not open. (*Id.* at pp. 109–11, 113). When the Leased Box would not open, the bank employee advised Morsch that "they were going to have to drill into [her] box." (*Id.* at pp. 112, 115). Chase then scheduled an appointment to drill into the box on Friday, August 5, 2016 at 9:00 a.m. (*Id.*).

Morsch returned to Chase for her scheduled appointment and met with three individuals—two Chase employees ("**Chase Employees**") and an individual that Chase hired to drill into the box. (*Id.* at pp. 117–18). Once inside the vault, Morsch noticed that Chase did not intend to drill into the Leased Box. (*Id.*) Instead, Chase planned to drill into safe deposit box number "64"[1], which was in a different location than the Leased Box. (*Id.* at pp. 118). When Morsch informed the Chase Employees that the Leased Box was "never located" where they intended to drill, the Chase employees told Morsch that, as of 2012, the Leased Box had been rented by someone else. (*Id.* at pp. 118–19). Morsch

---

[1] The full number of "Box 64" is unclear from Morsch's deposition. However, based on the deposition testimony of Chase's branch manager, Elaine Meister ("**Meister**"), it appears that the full number for "Box 64" is "40064." (*See* Doc. 40, p. 54).

asked the Chase Employees when they moved the Leased Box, to which they replied, "we never moved it." (*Id.* at p. 119).[2]

Morsch insisted that the Leased Box belonged to her. (*Id.*). Despite Morsch's insistence, one of the Chase Employees asked her whether she wanted them to drill into Box 64. (*Id.*). Morsch responded, "if you're saying that's where it is, yes." (*Id.*). Chase drilled into Box 64, but it was empty. (*Id.* at p. 120). Chase refused to drill into the Leased Box. (Doc. 40, p. 54).

Morsch filed suit against Chase on December 19, 2017, seeking damages and specific performance. (Doc. 2). In the Complaint, Morsch asserts claims for: negligence (Count I), civil theft - conversion (Count II), specific performance (Count III), breach of contract (Count IV), and negligent misrepresentation (Count V). (Doc. 2). On February 5, 2018, Chase filed an Answer to the Complaint, asserting four affirmative defenses. (Doc. 7). Chase now seeks summary judgment as to its third affirmative defense, arguing that Morsch's purported damages are limited pursuant to an agreement she entered into with Chase. (Doc. 25 ("**First Motion**")). For reasons specified in detail below, Chase also moves for summary judgment as to all of Morsch's claims. (Doc. 38 ("**Second Motion**")). Morsch opposes both motions. (Doc. 41).

## II. STANDARD OF REVIEW

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[2] According to Elaine Meister, when Chase Bank acquired the safe deposit boxes from WAMU, Chase Bank did not move any of the safe deposit boxes. (*Id.* at pp. 47–48). But on some unspecified date, Chase Bank did relabel the safe deposit boxes to replace all letters with numbers. (*Id.*). Morsch's safe deposit box was relabeled from 00Z0064 to 40064. (*Id.* at pp. 41, 48).

6

of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); see also *HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).[3]

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational

---

[3] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

7

trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

I. **DISCUSSION**

   A. **Chase's First Motion**

In its First Motion, Chase moves for summary judgment on its third affirmative defense. (Doc. 25). Chase argues that, pursuant to the 2015 Lease Agreement: (1) Morsch's purported damages are limited to $25,000; and (2) Morsch is precluded from seeking damages for any lost cash or currency. (Doc. 25, pp. 3, 8–12). Alternatively, Chase argues that Morsch's damages are limited to $10,000 pursuant to the 2003 Lease Agreement. (*Id.* at pp. 3, 12).

In response, Morsch argues that her damages are not limited by the 2015 Lease Agreement because she never received nor executed the agreement. (Doc. 41, pp. 2, 20). However, this argument lacks merit for two reasons. First, Morsch did not need to execute the 2015 Lease Agreement for it to bind her because she expressly agreed to be "bound by . . . all amendments" to the 2003 Lease Agreement. (*See* Doc. 1-1, p. 12). Second, under Florida law, when an item is properly mailed, there exists a rebuttable presumption that the item was received by the addressee. *Konst v. Fla. E. Coast Ry.*, 71 F.3d 850, 851 (11th Cir. 1996).

Here, Andrews affirms that on April 1, 2015, Chase mailed Morsch a copy of the 2015 Lease Agreement. (*See* Doc. 25-3, p. 8; *see id.* at p. 91). Andrews also avows that a review of Chase's mailing matrix shows that Chase properly mailed the correspondence to the address at which Morsch resided. (*See* Doc. 25-3, p. 8; *see also id.* at p. 99). Morsch concedes that she lives at, and receives mail at, the residence where Chase sent

8

the 2015 Lease Agreement. (Doc. 25-1, pp. 7, 11; Doc. 37-1, pp. 111, 152). Therefore, it is presumed that Morsch received it.

In an attempt to rebut this presumption, Morsch denies receiving the 2015 Lease Agreement. (Doc. 37-1, p. 152). Without more, however, Morsch's mere denial of receipt is wholly insufficient to rebut the presumption that she received it. *In re Farris*, 365 F. App'x 198, 200 (11th Cir. 2010) (explaining that "[t]he mere denial of receipt, without more, is insufficient to rebut the presumption"). Accordingly, the Court finds that the 2015 Lease Agreement was properly mailed to, and presumptively received by, Morsch.

The Court's analysis does not end there. In her response, Morsch also argues that her damages are not limited by the 2015 Lease Agreement because some of her claims concern actions that Chase took before the 2015 Lease Agreement became effective. (Doc. 41, p. 27). In reply, Chase contends that Morsch has neither alleged nor offered evidence showing that its "purported 'overt acts' occurred in any time other than 2016." (Doc. 45, pp. 3–4). Chase is mistaken.

Although the Complaint is far from a model of clarity, Morsch alleges that the conduct underlying some of her claims occurred "on or before August 5, 2016."[4] For instance, under her negligence claim, Morsch alleges that Chase owed her a duty "to exercise reasonable care in the maintenance of[,] and management of access to[,]" her safe deposit box. (Doc. 2, ¶ 22). Morsch alleges that, "[o]n or before August 5, 2016, C[hase] beached its duty . . . when it allowed unknown third parties and/or Chase employees to physically access [her] box and either remove its contents and/or place its

---

[4] *See, e.g.*, Doc. 2, ¶ 23 (alleging that the conduct underlying Morsch's claim for negligence occurred on or before August 5, 2016); *see also id.*, ¶ 26 (incorporating the foregoing allegation into Morsch's claim for conversion and civil theft).

9

contents into another box to which [she] lacks access." (Doc. 2, ¶¶ 23, 26, 27). As a result, Morsch allegedly lost access to and possession of the contents placed in her box. (*Id.* ¶¶ 24, 29).

In support, Morsch proffered testimonial and documentary evidence. The evidence, which the Court views in the light most favorable to Morsch, shows that Morsch entered into a lease agreement with WAMU (now Chase) to rent the Leased Box in 2003. (Doc. 1-1, pp. 12–13). For several years Morsch deposited Property into the Leased Box and made all required rental payments. (Doc. 37-1, pp. 20–95; Doc. 25-3, p. 109). When Morsch went to access the Leased Box in 2016, Chase admitted to renting the Leased Box to another individual in 2012, thereby allowing that individual to access said box. (Doc. 37-1, p. 119). Chase refused to give Morsch access to the Leased Box and failed to produce her Property when requested. (Doc. 40, p. 54). As a result, Morsch lost access to and possession of the Property. (Doc. 25-2, p. 18; Doc. 37-1, pp. 20–95).

From this evidence, a reasonable jury could conclude that Chase's purported negligent acts occurred in 2012. Thus, material issues of fact remain as to whether Morsch's purported damages are limited by the 2015 Lease Agreement.[5] Accordingly, Chase's motion for summary judgment on its third affirmative defense is due to be denied.[6]

---

[5] Because material issues of fact remain as to whether Morsch's alleged damages are limited by the 2015 Lease Agreement, the Court does not address Chase's alternative argument that the 2003 Agreement applies.

[6] Chase Bank posits that, if the "Court accepts the argument that the alleged acts that caused Morsch's purported losses occurred in 2012, then all of her non-contract claims (Counts I, II, III, and V) should be dismissed in their entirety because all of those claims would be barred by the four-year statute of limitations." (Doc. 45, p. 4). However, the Court makes no factual finding as to whether Chase's alleged acts

### B. Chase's Second Motion for Summary Judgment

In its Second Motion, Chase first moves for summary judgment on all of Morsch's claims that require proof of damages—specifically, her claims for negligence, conversion, civil theft, breach of contract, and negligent misrepresentation.[7] (Doc. 38, pp. 14–18). In doing so, Chase contends Morsch is not qualified to testify regarding the value of any of the alleged missing or stolen Property because she is not an expert and merely relies on her own "subjective personal opinions." (*Id.* at pp.16–18). Chase argues that "since [Morsch] cannot value the [P]roperty," she cannot establish the damages element for her claims. (Doc. 38, pp. 18). The Court disagrees.

Under Florida law, "[a]n owner is always competent to give h[er] opinion on the value of h[er] property." *Sparger v. Newmar Corp.*, No. 12-81347-CIV, 2014 WL 3928556, at *6 (S.D. Fla. Aug. 12, 2014) (quoting *Meredith v. Hardy*, 554 F.2d 764, 765 (5th Cir. 1977));[8] *Ames v. Winnebago Indus., Inc.*, No. 5:04-cv-359OC10GRJ, 2005 WL 2614614, at *3 (M.D. Fla. Oct. 14, 2005). The owner need not be an expert, she need only be familiar with the characteristics of the property, have knowledge or acquaintance with its

---

occurred in 2012. The Court merely observes that material issues of fact remain that preclude summary judgment. Because genuine issues of material fact exist, the Court need not reach the merits of Chase's statute of limitations argument.

[7] *See generally*, *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1264 (S.D. Fla. 1994) (outlining the elements of civil theft and conversion); *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006) (listing the elements for breach of contract); *Paterson v. Deeb*, 472 So.2d 1210, 1214 (Fla. 1st DCA 1985) (providing the elements for negligence); *Alexander/Davis Props., Inc. v. Graham*, 397 So. 2d 699 (Fla. 4th DCA 1981) (listing the elements of negligent misrepresentation).

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

uses and purposes, and experience in dealing with it. *See Hill v. Marion Cty.*, 238 So. 2d 163, 166 (Fla. 1st DCA 1970) ("[A]n owner of property may testify as to its value, although not qualified as an expert."); *see also Neff v. Kehoe*, 708 F.2d 639, 644 (11th Cir. 1983) (concluding that the owner of a coin collection was permitted to give his lay opinion of its value).

Here, it is undisputed that Morsch is the owner of the alleged missing or stolen Property. Therefore, Morsch is qualified to offer her opinion as to the value of her Property, provided she can lay a proper foundation. Chase argues that Morsch "has no idea of the value of the [Property]", and that she is merely "guessing," therefore she cannot lay a proper foundation to testify regarding damages. The Court is unpersuaded. While some of Morsch's valuations of the Property appear to be based on speculation, (*see, e.g.*, Doc. 37-1, pp. 34, 45), other valuations appear to be based on her personal knowledge (*see, e.g.*, *id.* at pp. 45–48, 79–81, 89–90). As such, the Court cannot conclude, as a matter of law, that Morsch is unable to establish damages.

The Court finds it necessary to hear Morsch's testimony at trial. *See United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010) (stating questions that turn on the existence of an adequate foundation and context are often best determined by considering the evidence in proper context at trial). If Morsch can lay a proper foundation regarding the value of her Property, Chase will have the opportunity to cross-examine her. However, if Morsch cannot lay a proper foundation regarding the value, her testimony as to topics on which she lacks personal knowledge will be excluded if Chase raises a proper objection.

Next, Chase moves for summary judgment as to Morsch's claim for civil theft. A cause of action for civil theft under Florida law "derives from two statutory sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section." *Palmer v. Gotta Have it Golf Collectibles, Inc.*, 106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000) (quoting *Ames v. Provident Life & Accident Ins. Co.*, 942 F. Supp. 551, 560 (S.D. Fla. 1994), *aff'd*, 86 F.3d 1168 (11th Cir. 1996)). Thus, to maintain a cause of action for civil theft, a plaintiff "must show by 'clear and convincing evidence' an injury caused by the defendant's violation of one or more of the provisions of the criminal theft laws found in Fla. Stat. §§ 812.012–037." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326–27 (11th Cir. 2006) (quoting Fla. Stat. § 772.11).

Morsch does not cite a specific criminal statute, but she appears to allege a violation of the criminal theft statute, Fla. Stat. § 812.014. Therefore, to succeed on her claim for civil theft, Morsch must demonstrate that Chase: (1) knowingly obtained or used, or endeavored to obtain or use, the plaintiff's property; (2) with felonious intent; (3) to either temporarily or permanently (a) deprive the plaintiff of its right to benefit from the property, or (b) appropriate the property to the defendant's own use or to the use of anyone not entitled to the property. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing Fla. Stat. §§ 772.11 (providing civil remedy for theft or exploitation), 812.014(1) (criminal theft statute)). Felonious intent "is the intent to deprive another of its property" and is often difficult to demonstrate by direct proof, therefore, it "may be shown by circumstantial evidence" and drawing inferences from the surrounding factual circumstances. *R&M Mktg., Inc. v. Best Buy Auto of Tampa Bay, Inc.*, No. 8:16-CV-46-T-

TBM, 2017 WL 2869541, at *3 (M.D. Fla. Apr. 12, 2017) (quoting *Wachovia Bank N.A. v. Tien*, 658 F. App'x. 471, 475 (11th Cir. 2016)) (denying summary judgment on civil theft claim because the issues of "intent and credibility [are] question[s] that must be decided by the fact-finder").

Chase argues that Morsch "cannot prove civil theft because there is no evidence of [felonious] intent." (Doc. 38, pp. 18–19). The Court disagrees. When the evidence is construed in Morsch's favor, as it must be for purposes of summary judgment, it reflects that Morsch leased a safe deposit box at Chase. (Doc. 1-1, pp. 12–13). Over the course of several years, Morsch deposited her Property into the safe deposit box. (Doc. 37-1, pp. 20–95). Morsch never gave her safe deposit keys to any other individual. (Doc. 25-1, pp. 9, 12). Nor did she grant anyone permission to access her safe. (*Id.*; Doc. 37-1, p. 105). There were only two ways to access the safe: either by using Morsch's key along with the corresponding key held by Chase, or by drilling into it, which seems like something only Chase could do. (Doc. 40, p. 26; Doc. 37-1, p. 98). When Morsch accessed her safe deposit box in 2012, she deposited several rare gold coins, but did not remove anything. (Doc. 37-1, pp. 97, 101–104). At that time, Morsch's box contained Property worth over $100,000. (Doc. 25-2, p. 18). Yet, when Morsch went to the bank in 2016, the box which Chase insists belongs to her was completely empty. (Doc. 37-1, p. 120). Consequently, Morsch no longer has possession of her Property. (Doc. 25-2, p. 18; Doc. 37-1, pp. 20–95). From this evidence, a reasonable jury could conclude that Chase took Morsch's Property out of the safe deposit box, and that it did so with the intent to deprive her of it. *See R&M Mktg., Inc*, 2017 WL 2869541, at *4. Accordingly, Chase's motion for summary judgment on Morsch's claim for civil theft is due to be denied.

As to its final argument, Chase asserts that Morsch's claim for specific performance—wherein she seeks a Court order directing Chase to give her access to the Leased Box—fails because Morsch has an adequate remedy at law (i.e., her various claims for money damages). (Doc. 38, pp. 19–20). Chase further argues that Morsch's request for specific performance is not permissible because another customer is renting the Leased Box, and the Court cannot order that customer to open the box since the customer is not a party to this lawsuit. (Doc. 45, p. 11). However, questions of fact remain as to whether Morsch can establish damages and whether another customer is renting the Leased Box. Accordingly, the Court will deny Chase's motion for summary judgment on Morsch's claim for specific performance.

In sum, there are simply too many issues of material fact to grant Chase's motions for summary judgment. This case should properly be resolved by a jury.

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant JPMorgan Chase Bank, N.A.'s Motion for Entry of Summary Judgment on its Third Affirmative Defense (Doc. 25), and its Motion for Entry of Summary Judgment on All Counts of the Complaint (Doc. 38) are **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on November 7, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties